UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER CASHMAN, : | |
| : | |
| Plaintiff, : | |
| : | LEAD CASE |
| v. : | Civil No. 3:02CV1423 (MRK) |
| : | |
| MICHAEL RICIGLIANO JR., and : | |
| MARGIOTTA & RICIGLIANO, : | |
| : | |
| Defendants. : | |

## MEMORANDUM OF DECISION

This case arises from claimed violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Connecticut Creditor Collection Practices Act, Conn. Gen. Stat. § 36a-645, the Consumer Collection Agency Act, Conn. Gen. Stat. § 36a-800, Conn. Gen. Stat. § 52-568, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a. The Plaintiff, Christopher Cashman, filed a Complaint [doc. #1] against Michael Ricigliano, Jr. and the law firm of Margiotta & Ricigliano (collectively, "the Defendants") on August 15, 2002, followed by an Amended Complaint [doc. #4] ("Am. Compl.") on December 5, 2002. Mr. Cashman's is the lead case in a consolidated action against the Defendants that includes the following actions: Kelly Jackson (Civ. No. 3:02cv1424 (MRK)); Kathleen Strozeski (Civ. No. 3:02cv1426 (MRK)); Janet B. Montville (Civ. No. 3:02cv1427 (MRK)); and Luciano Petrolito (Civ. No. 3:02cv1822 (MRK)) (collectively, "the Plaintiffs").[1] Presently before the Court are cross motions for summary judgment – Plaintiffs' Motion for Partial Summary

---

[1] The cases were consolidated by order of the Court on March 5, 2003 [doc. #23] upon determination that the Plaintiffs assert claims against the same Defendants under the FDCPA and raise common questions of law and fact. *See* Order [doc. # 23], at 1.

Judgment [doc. #65] and Defendants' Motion for Summary Judgment [doc. #72] – as well as Plaintiffs' Motion to Strike Affidavit [doc. #75].

### I. Background

The pertinent facts are drawn from the parties' pleadings submitted in connection with the pending motions.[2] The parties explicitly represented to the Court at oral argument that, for the

---

[2] The parties' submissions consist of the following pleadings: Plaintiffs' Memorandum in Support of Summary Judgment [doc. #66] ("Mem. in Supp. of Summ. J."); Plaintiffs' Local Rule 56(a)1 Statement [doc. #67] ("Pls.' 56(a)1 Statement"); Plaintiffs' Reply in Support of Motion for Partial Summary Judgment [doc. #76] ("Pls.' Reply"); Defendants' Motion for Summary Judgment [doc. #72]; Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and In Support of Defendants' Motion for Summary Judgment [doc. #73] ("Defs.' Mem. of Law"); Defendants' Local Rule 9(c)1 Statement [doc. #74] ("Defs.' 9(c)1 Statement"); Plaintiffs' Opposition to Defendants' Motion for Summary Judgment [doc. #78] ("Pls.' Opp. to Mot. for Summ. J."); Plaintiffs' Local Rule 56(a)2 Statement [doc. #79] ("Pls.' 56(a)2 Statement").

Defendants did not file a Local Rule 56(a)2 Statement in response to Plaintiffs' Local Rule 56(a)1 Statement [doc. #67] filed in support of Plaintiffs' Motion for Partial Summary Judgment [doc. #65]. Local Rule 56(a)2 states that

> [T]he papers opposing a motion for summary judgment shall include a document entitled 'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)2 Statement must also include in a separate section entitled 'Disputed Issues of Material Fact' a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

In addition, Local Rule 56(a)3 states that

> Each statement of material fact . . . by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial . . . Counsel . . . are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including . . . when the opponent fails to comply, an order granting the motion.

purpose of the pending motions, the record is complete and no further discovery is necessary. There are only a small number of uncontested facts that are relevant to the key issue raised by the parties' summary judgment motions, which is whether the Defendants[3] qualify as "debt collectors" under the FDCPA.

Margiotta & Ricigliano ("M&R") is a small, four-attorney, law firm with its principal office in Garden City, New York. Defs.' 9(c)1 Statement ¶ 1; Pls.' 56(a)2 Statement ¶ 1. Mr. Ricigliano, Jr. was at all relevant times the only attorney at M&R who is admitted to practice in the State of Connecticut. Defs.' 9(c)1 Statement ¶ 2; Pls.' 56(a)2 Statement ¶ 2. In or about the fall of 2001, M&R was retained by Arrow Financial Services LLP ("Arrow") pursuant to a written retainer agreement to render legal services on behalf of Arrow in connection with various allegedly outstanding consumer credit card debts which had been assigned to Arrow. Defs.' 9(c)1 ¶ 8; Pls.' 56(a)2 ¶ 8. At all relevant times, Arrow was licensed as a collection agency by the

---

Since, "all material facts set forth in [the movant's Rule 56(a)(1) Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)," D. Conn. L. Civ. R. 56(a)(1), the Plaintiffs' factual assertions in their Rule 56(a)(1) Statement will be deemed admitted . *See S.E.C. v. Global Telecom Servs., L.L.C.*, No. 3:03 CV 418 (PCD), 2004 WL 1638045, at *7 (D. Conn. July 19, 2004).

[3] Defendants are treated together for liability purposes since a partnership is liable for the actions of its partners taken within the scope of employment. *See, e.g., Bartlett v. Heibl,* 128 F.3d 497, 499-500 (7th Cir. 1997) ("If [defendant] were being sued for conduct within the scope of his agency or employment as a partner or an associate of a law firm, the firm could be named along with him as a defendant, because it would be liable jointly with him for that conduct."); *Dinco v. Dylex Ltd.,* 111 F.3d 964, 969 (1st Cir. 1997) ("Every partner is an agent of the partnership for the purposes of the business, and the act of every partner including the execution and the partnership name of any instrument or apparently carrying on in the usual way the business of the partnership of which he or she is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular manner and the person with whom he is dealing has knowledge of the fact that he has no authority.").

Connecticut Banking Department. Pls.' 56(a)1 Statement [doc. #67] ¶ 7. The agreement, entitled "Agreement for Legal Collection Service," ("Agreement") provides, in part, the following:

> This Agreement is made and entered into as of _____, by and between ARROW FINANCIAL SERVICES, LLC ("Client") . . . and MARGIOTTA & RICIGLIANO ("Attorney").
>
> WHEREAS, Client and Attorney agree that certain accounts identified herein and placed by Client with Attorney shall be governed by the terms and conditions of this Agreement;
> Whereas, Attorney desires to perform certain legal collections for Client as set forth in this Agreement, and Client desires Attorney to undertake such collections pursuant to the terms herein . . .
>
> I.   SCOPE OF ENGAGEMENT
>
>   A.   Client will place accounts with Attorney for litigation and collections purposes and Attorney will undertake legal representation on each account placed by Client by commencing action within 45 days of receipt of such accounts. Attorney shall have sole discretion whether or not to proceed with litigation. In such cases where suit is filed and Client is not the creditor, Client recognizes that the creditor is the "Client" within such lawsuit . . . Client warrants that it has authority from all other relevant creditors to place such accounts for litigation with Attorney under this Agreement.
>
>   B.   Attorney will represent Client and creditors in all phases of litigation as related the accounts placed with Attorney, including, but not limited to, institution of suit, court appearances, obtaining and enforcing judgments, and all other associated matters.
>   . . .
>
> III.  GENERAL MATTERS
>
>   . . .
>
>   C.   This Agreement shall be effective as of the date hereof and continue in effect until terminated as herein provided. Either party may terminate this Agreement by giving the other party at least thirty (30) days prior written notice of the date of termination . . .

*See* Exhibits attached to doc. #67.[4]

It is undisputed that during the period from about October 2001 through February 2002, a total of five months, Defendants opened over 90 collection matters for Arrow in which they sent collection letters to debtors. Affidavit of Michael Ricigliano, Jr. [doc. #72] at 5. Defendants stated at oral argument that Mr. Ricigliano, Jr. and paralegals handled the collection matters for the firm. The letterhead on the demand letters listed "Margiotta & Ricigliano," followed by "Attorneys at Law" and a Uniondale, New York address. To the right of the letterhead was a post office box address and telephone number for an office in Madison, Connecticut. *See* Exhibits attached to doc. #67. The Madison, Connecticut post office box address on the letter was opened and used solely for the Arrow collections. *Id.* ¶ 13. The Connecticut telephone number on the letter was also opened and used solely for the Arrow collections. *Id.* ¶ 14. To the left of the letterhead is a list of four names: Joseph M. Margiotta, Michael J. Ricigliano, Ellen Savino McCormack, and Michael Ricigliano, Jr. An asterisk after Mr. Ricigliano, Jr.'s name notes that he is "admitted in NY & CT." *See* Exhibits attached to doc. #67.

The contents of the letter addressed to Mr. Cashman, and dated October 29, 2001, is as follows:[5]

> Our Client, Arrow Financial Services, has referred to us your open account for collection. There is currently due and owing to Arrow Financial Services, Assignee of Capital One the sum of $1,348.18 credit card debt.

---

[4] Regrettably, counsel has not paginated, tabbed or otherwise identified for ease of reference the numerous exhibits attached to Plaintiffs' 56(a)1 Statement. Therefore, only general references to "doc. #67" will be made when citing or describing an exhibit accompanying Plaintiffs' 56(a)1 Statement.

[5] There are five sample letters included in Plaintiffs' exhibits, the bodies of which are identically worded. Exhibits attached to doc. #67.

> Please make payment in care of this office. If there is any reason why you are unable to make immediate full payment, or it you dispute this account, kindly contact the undersigned.
>
> This office shall assume all portions of this debt to be valid unless disputed in writing within thirty (30) days of the date of this notice. Should you notify our office that the debt or any portion thereof is disputed we will obtain verification and forward same to you.
>
> In the event this amount is not paid, we will have no alternative but to institute legal action against you, which can result in additional liability by way of interest on the debt and court costs.

*See* Exhibits attached to doc. #67. The letter is signed by a "Christine Raffa, Paralegal," and "Collections Department" appears beneath the name. *Id.* However, there was no "Collections Department" at the law firm when the letters were sent out. Pls.' 56(a)1 Statement ¶ 15. At the lower portion of the letter, in upper case, bold face print, was the following:

> PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED BY US FROM YOU OR ABOUT YOU WIL BE USED FOR THAT PURPOSE. WE ARE NOT ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER U.S. BANKRUPTCY LAWS.

*See* Exhibits attached to doc. #67. Defendants admit to having initiated civil actions against at least 53 of the individuals to whom it sent collection letters. *See* List of Actions Commenced by Margiotta & Ricigliano on Behalf of Arrow Financial Services [doc. #72], Ex. D. However, Defendants indicated that they have withdrawn, filed motions to withdraw from, or discontinued most of the 53 cases.[6] *See id.*

For the year ending December 31, 2001, the Defendants report that their revenues

---

[6] Defendants' withdrawals and discontinuances were filed or granted after February 2002. For example, at least 15 lawsuits were discontinued in mid to late March of 2002, Defendants were relieved as counsel in approximately 6 suits in May of 2002. Defendants conceded that, as of March 2004, motions to withdraw remained pending in 24 cases.

resulting from its work on behalf of Arrow totaled approximately $371 and that the firm's total revenues for 2002 were $732, 154. Defs.' Mem. of Law at 11. For the year ending December 31, 2002, Defendants' revenue from work on behalf of Arrow yielded approximately $3,010, while total revenues for 2002 totaled approximately $703,957.

Plaintiffs filed their suits against Defendants alleging that Defendants were "debt collectors" under the terms of the FDCPA, and that, among other things, Defendants sent collection letters that were deceptive and misleading, and that Defendants filed lawsuits against Plaintiffs based on false allegations. Plaintiffs contend that Defendants' actions violated the FDCPA and Connecticut state statutory law. *See* Mem. in Supp. of Summ. J. at 5-16.

## II. Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs.

*See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen,* 477 U.S. at 249-50.

### III. Discussion

Defendants did not contest either in their briefs or at argument that their actions violated the FDCPA, assuming they are subject to suit under FDCPA. Rather, Defendants oppose Plaintiffs' motion for partial summary judgment, and cross-move themselves for summary judgment, based on their contention that the undisputed facts show that they are not "debt collectors," and consequently the FDCPA does not apply to them. Defs.' Mem. of Law at 3, 8. Therefore, the sole question for the purposes of determining liability and deciding the pending motions is whether Defendants qualify as "debt collectors" under the FDCPA.

The FDCPA "applies to attorneys 'regularly' engaging in debt collection activity, including such activity in the nature of litigation." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004) (citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). As it applies to this action, the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed to due another." 15 U.S.C. § 1692a(6). At the time the parties in this case briefed their motions and appeared before the Court to argue their

positions, the Second Circuit had not squarely addressed the issue of what constitutes "regularly" collecting debts within the meaning of § 1692a(6). However, on July 1, 2004, the Second Circuit issued its decision in *Goldstein*, which set forth an analytical framework and guidance for determining who qualifies as a "debt collector" under the FDCPA. The Court finds this case to be controlled by *Goldstein* and concludes that Defendants are "debt collectors" under FDCPA for the same reasons that the Second Circuit concluded that the defendant law firm in *Goldstein* was a debt collector.

As the Second Circuit explained in *Goldstein*, "The FDCPA establishes two alternative predicates for 'debt collector' status – engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein*, 374 F.3d at 61; *see* 15 U.S.C. § 1692a(6). As in this case, there was no contention in *Goldstein* that the defendant's business principally involved debt collection. *Golstein*, 374 F.3d at 61. Rather, the relevant issue was what constituted "regular" debt collection activity. In *Goldstein*, the defendant, a New York law firm that represented a non-party client in connection with landlord-tenant matters, moved for summary judgment, in part based on its contention that, as in this case, it was not a debt collector under the FDCPA. *Goldstein*, 374 F.3d at 59. The district court granted summary judgment based on its conclusion that the defendant was not a debt collector within the meaning of the FDCPA. *Id.* The Second Circuit vacated the district court's judgment, finding that the defendant could reasonably be regarded as a debt collector subject to suit under the FDCPA. In reversing the district court's grant of summary judgment, the Second Circuit emphasized that, "[W]e believe that the decision below should have focused on the *regularity* of [defendant's] debt collection activity *rather than principally on the proportion* its business devoted to debt

collection." *Goldstein*, 374 F.3d at 60 (emphasis added).

Of particular importance to the present case is the Second Circuit's observation that considerations of the percentage of resources dedicated to, and revenues derived from, debt collection work, as well as whether a firm marketed itself as a debt collector or had a regular client relationship with a debt collecting business:

> [w]hile not irrelevant to a regularity inquiry (clearly, an entity devoting a substantial part of its resources, or deriving substantial revenues from, debt collecting, or actively soliciting such business, would likely perform such work with a degree of regularity), are more pertinent to the first prong of the statutory debt collector definition – debt collection as principal business – than to the question of whether the entity engages regularly in debt collection.

*Id.* at 61. As the Second Circuit noted, "[f]ocusing a regularity inquiry primarily on the proportion of overall work or firm revenue, a factor easily affected by the size and service pricing determinations of the law practice, blurs the distinction between the 'principal purpose' and 'regularity' aspects of the statutory definition of debt collector." *Id.* at 61.

Instead, the Second Circuit held, the question whether a lawyer or law firm "regularly" engages in debt collection activity within the meaning of § 1692a(6) must be assessed on a "case-by-case basis in light of factors bearing on the issue of regularity." *Id.* at 62. The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status, and the factors relevant to that inquiry are as follows:

> Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have

10

>retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein*, 374 F.3d at 62-63.  Finally, the court noted that facts relating to the role debt collection plays in the practice as a whole and whether the law practice seeks debt collection business by marketing itself as having debt collection expertise, may also be relevant indicators of the regularity of the firm's debt collection work.  *Id.* at 63.

Examining the record as a whole in light of the factors identified in *Goldstein* as bearing on the issue of "regularity," this Court concludes that during the relevant time period involved in this case, Defendants were "regularly" engaged in debt collection activity and therefore they are debt collectors within the meaning of FDCPA.  First, the absolute number of debt collection communications issued by Defendants during the relevant period demonstrate regularity.  The parties have stipulated that Defendants issued 97 collection letters during the approximately five-month period relevant to this case, or nearly 20 per month, a number that exceeds that which the Second Circuit stated was a "large" number that demonstrated regularity in *Goldstein. Id.* at 63 (firm issued more than 10 notices a month in 7 months and 15 notices in 3 months).  Moreover, it is undisputed that Defendants initiated 53 collection lawsuits in connection with their collection efforts.

Second, the frequency and pattern of Defendants debt collection activity supports a conclusion of "regularity."  During a relatively short period of time, Defendants issued a very large number of collection letters and then filed lawsuits against a sizeable percentage (53 out of 97, or about one-half) of those individuals to whom Defendants had sent letters.

Third, a single paralegal signed all of the letters, which were all drafted by Mr.

11

Ricigliano, Jr. Moreover, at argument, Defendants represented to the Court that Mr. Ricigliano, Jr. was the only lawyer in the firm who pursued debt collection activity. Therefore, it appears that certain personnel in the firm were devoted, at least in part, to debt collection activity.

Fourth, Defendants put in place facilities designed expressly to facilitate its debt collection activity. For example, Defendants established a Connecticut phone number and post office address specifically for the purposes of servicing debt collection activities.[7]

Fifth, Defendants' debt collection activity was undertaken in connection with an ongoing relationship with Arrow, a licensed collection agency. *Id.* at 62. Given the volume of letters sent and lawsuits filed on Arrow's behalf in such a short period of time, it is apparent that Defendant's activity was more than a sporadic or sparse commitment to servicing debt collection matters on behalf of Arrow. The Agreement between Defendants and Arrow only underscores this point,

---

[7] The deposition of Mr. Ricigliano contains the following exchange:

Q: The upper right-hand corner of the letter has a P.O. Box in Madison, Connecticut?
A: Correct.
Q: And who maintains that? Who pays for that P.O. Box?
A: I believe the office paid for the P.O. Box.
    . . .
Q: Did you have that P.O. Box just for the purpose of these letters?
A: Yes.
    . . .
Q: There is a Connecticut phone number up there, and where did the telephone number --
A: It went to like a voice mail, I believe, that – someone called into that number. We could check that, you know, voice mail to see who called.
    . . .
Q: And was that number established for the purpose of this lawsuit?
A: No. It wasn't established.
Q: Not for this, for your representation for Arrow?
A: Yes.

Deposition of Michael Ricigliano, Jr. [doc. #67], Exhibits, at 88-90.

providing as it does that "Client will place accounts with Attorney for litigation and collections purposes," "Attorney will represent Client and creditors in all phases of litigation as related the accounts placed with Attorney," and that "[t]his Agreement shall be effective as of the date hereof and continue in effect until terminated as herein provided." *See* Agreement at 1-3.

The Court is unmoved by Defendants' insistence that the paramount consideration in determining whether they are debt collectors should be the proportion that debt collection work bears to the firm's overall work. *See* Defs.' Mem. of Law at 8-12. The Second Circuit explicitly stated that "[f]acts relating to the role debt collection work plays in the practice as a whole should [] be considered *to the extent they bear on the question of regularity* of debt collection activity." *Goldstein*, 374 F.3d at 63 (emphasis added). In this case, the frequency and indicia of commitment to efforts on behalf of Arrow demonstrate that Defendants did not casually or perfunctorily undertake their debt collection work.

Defendants admitted at argument that during the two years leading up to and including the five months relevant to this motion, Defendants handled a total of 1200 matters. This translates to 600 matters in the one-year window that includes Defendants' retention by Arrow, and 250 matters over the five months during which the 97 demand letters were issued in connection with debt collection matters. As a percentage, then, the 97 debt collection matters constituted approximately 39% of the 250 matters handled by the firm during the relevant five months. The fact that Defendants filed 53 lawsuits illustrates both the considerable time and frequency of their attention to debt collection work. Defendants argue that the lawsuits should be disregarded since Defendants have either withdrawn from, moved to be relieved as counsel in, or have discontinued many of these cases. *See* List of Actions Commenced by Margiotta &

Ricigliano on Behalf of Arrow Financial Services [doc. #72], Ex. C; *see also* Defs.' Mem. of Law at 10. The Court disagrees. While the lawsuits might have arisen from the same matters as the demand letters and therefore perhaps should not contribute to the absolute number of debt collection matters opened by Defendants during the five-month period, the lawsuits undoubtedly required additional attention and constituted additional work that added to the overall volume and frequency of debt collection activity handled by Defendants. Therefore, the Court concludes that: (1) the absolute number of communications and/or collection-related litigation over the five-month period; (2) the frequency over the relevant period; (3) the existence of personnel specifically assigned to work on debt collection activity; (4) the establishment of a P.O. Box address and telephone number solely for the purposes of debt collection matters; (5) Defendants' undertaking of debt collection activity in connection with an ongoing client relationship with a client, Arrow, that retained Defendants to assist in the collection of outstanding consumer debt obligations; and (6) the percentage of debt collection work to the overall volume of the firm's work, support a conclusion of "regularity", whether those factors are considered collectively or individually.

     Of course, as *Goldstein* implicitly suggests, no one factor should be determinative of the regularity inquiry. However, here, all of the factors point to only one conclusion – that Defendants were regularly involved in debt collection activity during the relevant time period and therefore, they are debt collectors within the meaning of FDCPA. Since Defendants have conceded that Plaintiffs would prevail on liability in the event the Court determined that they are debt collectors under the FDCPA, Defendants are not entitled to summary judgment and instead Plaintiffs are entitled to partial summary judgment on liability under FDCPA and Connecticut

statutory law.[8]

### IV. Conclusion

For the reasons stated herein, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment [doc. #65] and DENIES Defendants' Motion for Summary Judgment [doc. #72]. Having ruled in favor of Plaintiffs on the question of liability, the Court DENIES as moot Plaintiffs' Motion to Strike Affidavit [doc. #75].

Damages will be determined by Magistrate Judge Garfinkel at a hearing he will convene for that purpose.

IT IS SO ORDERED.

/s/      Mark R. Kravitz    
United States District Judge

Dated at New Haven, Connecticut: August 25, 2004.

---

[8] Defendants conceded at argument that they did not submit a substantive objection to Plaintiffs' claims that Defendants violated various state statutory laws. Defendants' only position with regard to the state law claims was simply that if Defendants were not determined to be debt collectors, then the Court should decline to exercise supplemental jurisdiction over the state law claims. Defs.' Mem of Law at 12-13. Defendants further conceded that, consequently, if the Court concluded that they are debt collectors, then Plaintiffs are entitled to partial summary judgment on the state law claims.