```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
                          HARTFORD DIVISION            FILED
                                                   2005 MAY -4  P 1:04

- - - - - - - - - - - - - - - - - X
CHRISTOPHER CASHMAN,                    Lead Case No.
                                        302-CV-1423 (MRK)
         Plaintiff,

     - against -                        **AFFIRMATION OF NEIL W.
                                        SILBERBLATT IN OPPOSITION
MICHAEL RICIGLIANO, JR. and             TO PLAINTIFFS' INTERIM
MARGIOTTA & RICIGLIANO,                 FEE APPLICATION**

         Defendants.
- - - - - - - - - - - - - - - - - X
KELLY JACKSON,                          302 CV 1424

         Plaintiff,

     - against -

MICHAEL RICIGLIANO, JR. and
MARGIOTTA & RICIGLIANO,

         Defendants.
- - - - - - - - - - - - - - - - - X
KATHLEEN STROZESKI,                     302 CV 1426

         Plaintiff,

     - against -

MICHAEL RICIGLIANO, JR. and
MARGIOTTA & RICIGLIANO,

         Defendants.
- - - - - - - - - - - - - - - - - X
JANET B. MONTVILLE,                     302 CV 1427

         Plaintiff,

     - against -

MICHAEL RICIGLIANO, JR. and
MARGIOTTA & RICIGLIANO,

         Defendants.
- - - - - - - - - - - - - - - - - X
```

```
- - - - - - - - - - - - - - - - - X
LUCIANO PETROLITO,                        302 CV 1822

        Plaintiff,

    - against -

MICHAEL RICIGLIANO, JR. and
MARGIOTTA & RICIGLIANO,

        Defendants.
- - - - - - - - - - - - - - - - - X
```

NEIL W. SILBERBLATT, an attorney duly admitted to practice in the Courts of this State, hereby affirms under the penalty of perjury as follows:

    1.    I am an attorney associated with the law firm of Steinberg & Cavaliere, LLP, attorneys for defendants Michael Ricigliano, Jr. ("Mr. Ricigliano") and Margiotta & Ricigliano (collectively referred to herein as "Defendants") in the above-captioned consolidated actions.

    2.    I submit this affirmation, based upon my personal knowledge and information, in opposition to the Interim Fee Application submitted by plaintiffs' mutual counsel (Joanne S. Faulkner, Esq.).

**Procedural Background**

    3.    On or about August 15, 2002, plaintiffs Christopher Cashman, Kelly Jackson, Kathleen Strozeski, Janet Montville and Luciano Petrolito (collectively referred to herein as "Plaintiffs") - by and through their mutual counsel (Ms.

- 2 -

Faulkner) - commenced five separate lawsuits against Defendants in this Court[1].

4.  Apart from the difference in the names of the plaintiffs, the five Complaints filed in the above matters were, in all respects, identical.

5.  All of Plaintiffs' respective Complaints arise from, and relate to, Defendants' alleged "collection efforts" on behalf of Arrow Financial Services LLC ("AFS"). All of those Complaints make the same identical allegations of wrongdoing, and assert the same identical causes of action: namely, alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA")[2]. Essentially, there was one complaint which was mimeographed five times over.

6.  However, in her fee application, Ms. Faulkner asks this Court to award her $1,125 in legal fees for **nearly four hours** of

---

[1]   Although Plaintiffs all **filed** their respective Complaints at or about the same time (mid-August 2002), Ms. Faulkner did not **serve** the Complaints on behalf of Mr. Cashman, Ms. Jackson, Ms. Strozeski and Mr. Petrolito until December 2002.

Ms. Faulkner waited until long after Defendants had answered Ms. Montville's Complaint before serving Mr. Cashman's, Ms. Jackson's, Ms. Strozeski's and Mr. Petrolito's respective Complaints. Those four Complaints were served on Defendants' undersigned counsel by regular first-class mail. Thus, there should be no service of process charges in any of those four cases.

[2]   Mr. Cashman, Ms. Jackson, Ms. Strozeski and Mr. Petrolito all filed four separate - but identically-worded - Amended Complaints, asserting the same pendent State law claims against Defendants. Ms. Montville was granted leave to amend her Complaint to include the same State law claims.

legal services allegedly incurred by her in drafting the same three-page complaint five times over.

**The Court-Ordered Settlement Conference**

7.  On January 23, 2003 - with the sole exception of the Petrolito action - a Court-ordered settlement conference was conducted in the above matters before Hon. Holly B. Fitzsimmons, U.S.M.J., at the United States Courthouse in Bridgeport (where the Montville action was then pending). Pursuant to the notice of that conference (a copy of which is annexed hereto as Exhibit "A"), "PARTIES ARE REQUIRED TO BE PRESENT".

8.  Although **all parties** were clearly directed to attend that conference[3], Mr. Cashman, Ms. Strozeski and Ms. Montville all inexplicably failed to attend. Plaintiffs' counsel (Ms. Faulkner) offered no reason for her clients' non-attendance.

9.  Inasmuch as three of the four plaintiffs who were directed by this Court to attend that conference failed to show up - and as the parties were far apart in their settlement positions - **that conference lasted less than one-half hour.**

10. Nevertheless, in her fee application, Ms. Faulkner asks this Court to award her nearly $1,050 in fees - representing

---

[3] Mr. Ricigliano - whose sole office is in Garden City, New York - traveled to Bridgeport to attend that conference. Likewise, Defendants' undersigned counsel - who had undergone radical cancer surgery only ten days earlier - also attended that Court-ordered conference. The only persons who inexplicably failed to show up at that conference were plaintiffs Cashman, Strozeski and Montville.

**three and one-half hours** of legal services – for her attendance at the settlement conference on January 23, 2003[4].

### Defendants' Motion to Consolidate and Plaintiffs' Opposition Thereto

11.  Rather than litigate five separate (but otherwise identical) lawsuits – which would have resulted (and, judging by Ms. Faulkner's fee application, apparently did result) in needless and wasteful duplication of effort – Defendants' undersigned counsel proposed to Ms. Faulkner that these five actions be consolidated.

12.  Ms. Faulkner, however, flatly rejected that proposal and insisted that these five identical lawsuits be tried separately in three different district courts (in Hartford, New Haven and Bridgeport), and before four different district judges (Hon. Janet C. Hall, Hon. Alfred V. Covello, Hon. Dominic J. Squatrito and Hon. Gerard L. Goettel) – with the possibility of five different outcomes on the same factual and legal issues.

13.  As a result, on or about December 2, 2002, Defendants were compelled to move to consolidate these five actions.

14.  Needless to say, Ms. Faulkner strenuously opposed that motion, ironically claiming that Defendants' counsel was seeking

---

[4] Even if one includes the time spent by Ms. Faulkner in traveling from her office in New Haven to the federal courthouse in Bridgeport, that would not explain the three-and-a-half hours reflected in Ms. Faulkner's "time-sheets". According to www.mapquest.com, the traveling time from New Haven to Bridgeport is estimated to be 25 minutes.

- 5 -

to (in her words) "rack up" his own (or Plaintiffs') fees and costs in these actions.

15. By Decision and Order dated March 5, 2003 (a copy of which is annexed hereto as Exhibit "B"), this Court overruled Ms. Faulkner's specious objections and granted Defendants' motion to consolidate these five lawsuits. In that Order, this Court observed that the Complaints in the above-captioned actions are "essentially identical".

16. Now, in her fee application, Ms. Faulkner asks this Court to award her nearly $2,000 in fees for her time spent in pursuing her baseless (and ultimately rejected) arguments in opposition to Defendants' motion to consolidate.

**Defendants' Motion to Stay Discovery**
**and Plaintiffs' Opposition Thereto**

17. In almost immediate response to Defendants' motion to consolidate (filed on December 2, 2002) - and long before any Rule 26(f) discovery conference had been conducted - on or about December 4, 2002, Ms. Faulkner served discovery demands (requests for admission, written interrogatories and document production requests) on behalf of Mr. Cashman.

18. Those demands were **in all respects** identical to the multiple discovery demands which Ms. Faulkner had previously served on behalf of Ms. Montville.

19. In an effort to resolve any discovery dispute without the time and expense of motion practice, Defendants' undersigned counsel proposed to Ms. Faulkner that any discovery in these

- 6 -

actions await the disposition of Defendants' motion to consolidate. Defendants' counsel suggested to Ms. Faulkner that - if these five actions were consolidated (as ultimately occurred) - Plaintiffs and Defendants could serve one omnibus set of discovery demands and responses, rather than five separate but identical sets of discovery demands and responses.

20.  One would think that Ms. Faulkner would welcome this suggestion in the interest of streamlining discovery and reducing her clients' fees and expenses.  One would be wrong, however.

21.  Once again, Ms. Faulkner flatly rejected that suggestion and insisted that Defendants serve multiple responses to her multiple (and identical) discovery demands.  Ms. Faulkner also threatened to file motions to compel or for sanctions if Defendants did not respond to her multiple demands.

22.  As a result, on or about January 9, 2003, Defendants were compelled to move to modify this Court's "Standing Order" in the Cashman action to stay any discovery in that action pending the adjudication of Defendants' motion to consolidate.

23.  Needless to say, Ms. Faulkner opposed that motion.  As she had threatened, Ms. Faulkner cross-moved to compel Defendants to respond to her multiple (and identical) discovery demands, and to determine the sufficiency of Defendants' responses to Ms. Montville's requests for admission.

24.  By Decision and Order dated January 24, 2003 (a copy of which is annexed hereto as Exhibit "C"), this Court rejected Ms. Faulkner's specious arguments by granting Defendants' motion to

stay discovery in the Cashman action "until further notice from this Court".

25. By Decisions and Orders dated May 21, 2003 (copies of which are annexed hereto as Exhibit "D"), this Court also denied both of Ms. Faulkner's cross-motions: (i) to compel Defendants to respond to her multiple (and identical) discovery demands, and (ii) to determine the sufficiency of Defendants' responses to Ms. Montville's requests for admission.

26. Now, in her fee application, Ms. Faulkner asks this Court to award her nearly $3,000 in fees for her time spent in preparing and pursuing these frivolous and vexatious (and ultimately unsuccessful) discovery motions and objections.

**Defendants' Motion to Quash Plaintiffs'**
**Subpoena and Plaintiffs' Opposition Thereto**

27. On or about April 4, 2003 - after Defendants had moved to dismiss Plaintiffs' FDCPA claims and pendent State law claims (and before that motion had been decided) - Ms. Faulkner served a Subpoena Duces Tecum upon AFS's former counsel (Carmody & Torrance ("C&T")), demanding that C&T produce any correspondence between that firm and Defendants' undersigned counsel (without regard to subject matter).

28. In an effort to resolve that discovery dispute without the time and expense of motion practice, Defendants' undersigned counsel invited Ms. Faulkner to withdraw that Subpoena without costs to any party. Defendants' counsel pointed out to Ms. Faulkner that her Subpoena did not seek the production of any relevant documents and was not reasonably calculated to lead to

- 8 -

the discovery of relevant evidence. C&T likewise objected to that Subpoena.

29. Ms. Faulkner, however, refused to withdraw her Subpoena, and insisted that she would seek to enforce compliance with same, including a request for sanctions (if C&T did not comply therewith).

30. As a result, on or about April 9, 2003, Defendants were compelled to move to quash Plaintiffs' Subpoena. Needless to say, Ms. Faulkner strenuously opposed that motion.

31. By Decision and Order dated April 28, 2003 (a copy of which is annexed hereto as Exhibit "E"), this Court rejected Ms. Faulkner's specious objections and granted Defendants' motion to quash Plaintiffs' Subpoena. In so doing, this Court noted that Ms. Faulkner's Subpoena did not seek the production of any documents relevant to the issues in this case.

32. Now, in her fee application, Ms. Faulkner asks this Court to award her nearly $2,000 in legal fees for her time spent in preparing and pursuing her baseless Subpoena upon C&T (as well as nearly $80 for serving that Subpoena).

**Defendants' Attempt to Depose Plaintiffs and Plaintiffs' Motion for Protective Order**

33. On or about April 1, 2003, Defendants served notices to depose Plaintiffs.

34. Rather than comply with those discovery demands - and rather than suggest alternative dates for her clients' depositions (as Defendants' undersigned counsel repeatedly

- 9 -

invited her to do) - Ms. Faulkner instead moved for a protective order to prevent Defendants' counsel from deposing Plaintiffs.

35. In an effort to resolve this latest discovery dispute without the time and expense of further motion practice, on the morning of May 7, 2003 - at the direction of United States Magistrate Judge Thomas Smith's law clerk - Defendants' undersigned counsel attempted to set up a telephone conference call between Ms. Faulkner, the undersigned and Judge Smith's law clerk.

36. When Defendants' counsel called Ms. Faulkner, however, she adamantly (and without offering any explanation) refused to participate in any such conference call. Ms. Faulkner then hung up the telephone while Defendants' counsel was in mid-sentence.

37. As a result, Defendants were compelled to incur additional fees and costs by opposing Plaintiffs' baseless motion for a protective order.

38. By Decision and Order dated May 19, 2003 (a copy of which is annexed hereto as Exhibit "F"), this Court again rejected Ms. Faulkner's arguments, sustained Defendants' objections and denied Plaintiffs' motion for a protective order.

39. Nevertheless, Ms. Faulkner still failed or refused to make any of her clients available to be deposed.

40. Now, in her fee application, Ms. Faulkner asks this Court to award her nearly $2,000 in legal fees for her time spent in seeking to delay or prevent Plaintiffs' depositions.

**Mr. Ricigliano's Deposition**

41.  Notwithstanding her refusal to make any of her clients available to be deposed, Ms. Faulkner insisted that Mr. Ricigliano be produced for his deposition on any date she chose.

42.  Between April and June 2003, there was considerable correspondence between Defendants' undersigned counsel and Ms. Faulkner (copies of which are annexed hereto as Exhibit "G") regarding the scheduling of Mr. Ricigliano's deposition.

43.  In that correspondence, Defendants' undersigned counsel proposed dates to Ms. Faulkner on which Mr. Ricigliano was available.  Defendants' counsel also pointed out to Ms. Faulkner that Mr. Ricigliano had scheduling conflicts which prevented him from appearing on certain dates selected by her.

44.  Nevertheless, Ms. Faulkner rejected any of the dates suggested by Defendants' counsel and threatened to file yet another motion unless Mr. Ricigliano were made available to be deposed on the date she unilaterally decreed.

45.  Ultimately – and in sharp contrast to Ms. Faulkner's clients (who were never made available to be deposed) – Mr. Ricigliano was deposed on August 5, 2003.  That deposition – the **one and only** deposition conducted in the above matters – lasted approximately **two hours**.

46.  Now, in her fee application, Ms. Faulkner asks this Court to award her $3,000 for **ten hours** of legal services

- 11 -

supposedly spent by her in preparing for and attending Mr. Ricigliano's deposition[5].

47. Ms. Faulkner also asks to be awarded fees and costs for attending depositions of Mr. Ricigliano on dates which she unilaterally selected, and on which Defendants' counsel made it abundantly clear Mr. Ricigliano was unavailable to be deposed.

## Conclusion

48. As set forth at length above - in her fee application - Ms. Faulkner asks to be awarded fees for needlessly duplicative work; for interposing baseless and vexatious objections to Defendants' procedural and discovery-related motions (which motions were necessitated by Ms. Faulkner's own refusal to even attempt resolution of those discovery disputes); for pursuing equally vexatious procedural and discovery-related motions against Defendants; and for time entries (such as her ten hours spent in attending Mr. Ricigliano's two-hour deposition) which simply bear no relation to reality.

49. For the above-stated reasons, your affiant respectfully requests that this Court (i) deny, or sharply reduce, the fees and costs sought by Ms. Faulkner in the above matters; and (ii)

---

[5] Even if one includes the time spent by Ms. Faulkner in traveling from her office in New Haven to the federal courthouse in Hartford (where Mr. Ricigliano's deposition was conducted), that would not explain the ten hours reflected in Ms. Faulkner's "time-sheets". According to www.mapquest.com, the traveling time from Ms. Faulkner's office to the federal courthouse in Hartford is estimated to be 38 minutes.

- 12 -

grant such other and further relief as this Court may deem just and proper.

Dated:    White Plains, New York
             February 25, 2005

*Neil Silberblatt*
NEIL W. SILBERBLATT
Fed. Bar No. CT 04032

S&C#74615.1

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Affirmation was served this 25th day of February, 2005, by regular first-class mail, on the following counsel of record:

Joanne S. Faulkner, Esq.
123 Avon Street
New Haven, CT 06511-2422

*[signature: Neil Silberblatt]*
NEIL W. SILBERBLATT

S&C#74615.1



# Directions

Print | E-Mail | Send to Phone | PDA | New Directions

**START**

123 Avon St
New Haven, CT 06511-2422, US - Hotel Offers - Restaurant Offers

**END**

915 Lafayette Blvd
Bridgeport, CT 06604-4706, US - Hotel Offers - Restaurant Offers

## Find Nearby:

(e.g., Theaters)

[ 123 Avon St, New Haven, CT 06511-2422 ]  Or
[ Top Categories ]  [ Search ]

### Maneuvers

**Reverse Route | Avoid Highways | Revise Route**

| | | Distance | Maps |
|---|---|---|---|
| 1: | Start out going NORTHWEST on AVON ST toward LIVINGSTON ST. | <0.1 miles | Map |
| 2: | Turn RIGHT onto LIVINGSTON ST. | 0.1 miles | Map |
| 3: | Turn RIGHT onto WILLOW ST. | 0.5 miles | Map |
| 4: | Merge onto I-91 S via the ramp on the LEFT toward I-95. | 1.4 miles | Map |
| 5: | Merge onto GOVERNOR JOHN DAVIS LODGE TURNPIKE/I-95 S via the exit on the LEFT toward N.Y. CITY. | 18.5 miles | Map |
| 6: | Merge onto LAFAYETTE BLVD via EXIT 27 toward DOWNTOWN/HOUSATONIC COM-TECH COLL/HARBORYARD. | 0.4 miles | Map |
| 7: | Make a U-TURN at JOHN ST onto LAFAYETTE BLVD. | 0.1 miles | Map |
| 8: | End at 915 Lafayette Blvd, Bridgeport, CT 06604-4706 US | | Map |

**Total Est. Time:** 25 minutes  **Total Est. Distance:** 21.23 miles

**Bridgeport offer**
- Select -

**New Haven Hot**
Hotel Photos, Info & Vi
Save up to 50% on ho
www.Expedia.com

**Connecticut Fli**
Find the Lowest Fares
Book **Flights**, **Hotels**,
www.ORBITZ.com

**Hotels**
Low Rates at Top **Hote**
the Hotel Experts for G
www.hotels.com

**SuperSearch: Fli**
Save time & money. S
sites & book direct for
www.travelzoo.com

**Flights**
Find Great Fares with 1
Save on your Flight To
www.travelocity.com

**Connecticut Fli**
Pick Airlines & Times O
Own Price: 2 Ways To
www.priceline.com

**Connecticut Ho**
Quick & Easy Hotel Re
Get great savings & bo
www.HotelsByCity.cc

**New** Car Blowou
Locate The Nearest De
an Unbeatable Weeken
NewCarInsider.com



   

# Directions

Print | E-Mail | Send to Phone | PDA | New Directions

**START**

123 Avon St
New Haven, CT 06511-2422, US - Hotel Offers - Restaurant Offers

**END**

450 Main St
Hartford, CT 06103-3022, US - Hotel Offers - Restaurant Offers

## Find Nearby:

(e.g., Theaters)

[123 Avon St, New Haven, CT 06511-2422 ▼]

[Top Categories ▼]  [Search]    Or

### Maneuvers

**Reverse Route | Avoid Highways | Revise Route**              **Distance  Maps**

| | | Distance | Maps |
|---|---|---|---|
| 1: | Start out going NORTHWEST on AVON ST toward LIVINGSTON ST. | <0.1 miles | Map |
| 2: | Turn RIGHT onto LIVINGSTON ST. | 0.1 miles | Map |
| 3: | Turn RIGHT onto WILLOW ST. | 0.5 miles | Map |
| 4: | Turn LEFT to take the I-91 ramp toward I-95. | <0.1 miles | Map |
| 5: | Merge onto I-91 N toward HARTFORD. | 36.2 miles | Map |
| 6: | Take EXIT 29A on the LEFT toward CAPITOL AREA. | 0.3 miles | Map |
| 7: | Merge onto WHITEHEAD HWY. | 0.2 miles | Map |
| 8: | Take the exit. | <0.1 miles | Map |
| 9: | Turn LEFT onto PROSPECT ST. | <0.1 miles | Map |

**Hartford offers:**
[- Select -]

**Connecticut Hot**
Hotel Photos, Info & Vi
Find the Hotel You War
www.Expedia.com

**Hartford Hotels**
2-Star Hotels From $4
on Air, Hotel & Car. Bo
www.ORBITZ.com

**Hartford Hotels**
Low Rates Guaranteed
Room with the Hotel E
www.hotels.com

**SuperSearch: Fli**
Travelzoo SuperSearch
flight deals, book direc
www.travelzoo.com

**Flights**
Find Great Fares with T
Save on your Flight To
www.travelocity.com

**70% off- Hotels**
110% Lowest Price Gu
Exclusive Rates at 29,0
www.Lodging.com

**Cheap Hartford**
Find Great Deals On Rc
w/ LowestFare - Travel
www.lowestfare.com

**Flights Hartford**
Major Airlines, Major S
The Smarter Fare Sear
www.FareFox.com

**Other Offers:**

10: Turn RIGHT onto SHELDON ST.  <0.1 miles Map

Hartford Hotels
Hartford Real Estate
Hartford Insurance

11: Turn LEFT onto MAIN ST.  <0.1 miles Map

Hartford Schools
Hartford Jobs

12: End at 450 Main St, Hartford, CT 06103-3022 US  Map

**Total Est. Time:** 38 minutes  **Total Est. Distance:** 37.90 miles

**Hartford offers:**
- Select -

**Hartford Hotels**
2-Star Hotels From $45. Hot Deals on Air, Hotel & Car. Book Now!
www.ORBITZ.com

**Hartford Hotels**
Get Guaranteed Low Rates- Book with the Hotel Experts for Great Deals
www.hotels.com

About these results

Make this map interactive

## Route Overview Map



**NAVTEQ ON BOARD** All rights reserved. Use Subject to License/Copyright | Map Legend

These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

Business Solutions | Advertise | Wireless | Settings | Link to MapQuest | Help | Contact Us | About | Privacy | Legal